DANIEL G. BOGDEN
United States Attorney

GREG ADDINGTON
Nevada State Bar No. 6875
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada 89501
(775) 784-5438
(775) 784-5181 (fax)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| $199,930.00 IN UNITED STATES CURRENCY, | ) ) ) |
| Defendant. | ) |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, by and through Daniel G. Bogden, United States Attorney for the District of Nevada, and Greg Addington, Assistant United States Attorney, in a civil cause for forfeiture, respectfully states as follows:

1. This court has jurisdiction under 19 U.S.C. §§ 1603 and 1610; Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983; and 28 U.S.C. §§ 1345 and 1355.

2. This court has venue of this matter pursuant to 28 U.S.C. § 1395 because the above-named defendant is now, and during the pendency of this action will be, in the jurisdiction of this court.

3. In rem jurisdiction over the defendant property will be obtained through issuance of an appropriate warrant of arrest in rem or supplemental process pursuant to Rule G(3), Supplemental Rules.

4. The defendant is more particularly described as follows: $199,930.00 IN UNITED STATES CURRENCY, which was seized on March 1, 2013, from the vehicle being driven by John Paul Jeske (hereinafter "Jeske").

5. On or about March 1, 2013, the defendant property was seized on land at Washoe County, Nevada, by officers of the Northern Nevada HIDTA Interdiction Task Force employed by the Washoe County Sheriff's Office (WCSO). The United States Drug Enforcement Administration is a member of the Northern Nevada HIDTA Interdiction Task Force. Ever since the seizure of the defendant property, it has remained in the care, custody and control of the Office of the United States Marshals Service, Las Vegas, Nevada.

6. The defendant property was subject to administrative summary forfeiture proceedings; however, three separate claims were filed by three persons with each person claiming ownership of different portions of the defendant currency. Jeske claimed ownership of the sum of six thousand dollars ($6,000.00). Soom Boonnam claimed ownership of the sum of ten thousand dollars ($10,000.00). Port Boonnam claimed ownership of the sum of one hundred eighty three thousand nine hundred thirty dollars ($183,930.00).

## GENERAL ALLEGATIONS

7. On March 1, 2013, at approximately 8:41 p.m. (Pacific Time), Jeske was driving a 2013 Dodge Caravan vehicle, bearing Michigan license plates, westbound on Interstate 80 in Washoe County, Nevada.

8. Soom Boonnam was a passenger in the Dodge Caraven vehicle being driven by Jeske on March 1, 2013. Additionally, there were two young children who were passengers in the Dodge Caravan vehicle being driven by Jeske on March 1, 2013. The registered owner of the Dodge Caravan vehicle was EAN Holdings LLC, a car rental company.

9. The Dodge Caravan vehicle being driven by Jeske was stopped by a WCSO officer in Washoe County, Nevada, due to excessive speed and failing to maintain a travel lane in violation of Nevada law.

10. After initiating a traffic stop of the Dodge Caravan vehicle due to the observed traffic violations, the WCSO officer approached the Dodge Caravan vehicle and requested identification from the driver. The driver produced a Wisconsin driver's license which identified him as Jeske. Upon request, the driver also produced the rental agreement regarding the Dodge Caravan vehicle.

11. Upon approaching the Dodge Caravan vehicle, the WCSO officer detected the strong odor of laundry detergent or laundry dryer sheets within the interior of the vehicle. Based on his training and experience, the WCSO officer knew that laundry dryer sheets are often used by persons involved in drug trafficking to mask the odor of illegal drugs. The WCSO officer also observed several large suitcases in the cargo area in the back of the vehicle.

12. Jeske and the WCSO officer engaged in a consensual conversation. Jeske identified the adult passenger in the vehicle as his wife. Jeske stated that he and his wife had left Milwaukee on February 28 and had been driving non-stop with a destination of Sacramento, California. Jeske further stated he and his wife were traveling to Sacramento to pick up his wife's brother and then intended to return to Wisconsin where his wife's brother would live with Jeske and his wife. Jeske further stated that his wife's brother had a mental disorder which prevented him from continuing to live in California with Jeske's wife's aunt.

13. The rental agreement produced by Jeske showed that the Dodge caravan vehicle had been rented by Port Boonnam on February 28, 2013, in Milwaukee, Wisconsin, and was due to be returned to Milwaukee on March 7, 2013. Jeske stated that Port Boonnam was the second brother of Jeske's wife and that Port Boonnam resided in Wisconsin.

14. During the period of time in which Jeske was engaged in a consensual conversation with the WCSO officer, the WCSO officer observed that Jeske exhibited obvious signs of excessive nervousness and anxiety.

15. The adult passenger in the Dodge Caravan vehicle was identified as Soon Boonnam by her Wisconsin driver's license.

16. Soon Boonnam and the WCSO officer engaged in a consensual conversation. Soon Boonnam stated that Jeske was her boyfriend and that they were traveling to Sacramento, California to visit her aunt. Soon Boonnam further stated that her brother Port Boonnam had rented the Dodge Caravan vehicle and then flown to Sacramento meet them. Soon Boonnam further stated that she had no brothers other than Port Boonnam and that no other persons would be returning with her and Jeske and the children to Wisconsin at the conclusion of their trip to California. Soon Boonnam further stated that Jeske was not the father of the two young children who were passengers in the Dodge Caravan vehicle.

17. Following the completion of a records check, the WCSO officer urged Jeske to be attentive to his driving speed and to driving safely and informed Jeske that he (Jeske) was free to leave.

18. After informing Jeske that he was free to leave, the WCSO officer and Jeske engaged in a consensual conversation. Responding to an enquiry from the WCSO officer, Jeske stated there was no contraband in the Dodge Caravan vehicle. Jeske further stated that there was $2500.00 belonging to Soon Boonnam's brother in the vehicle and that the money was for gambling by Soon Boonnam's brother.

19. Jeske voluntarily consented orally and in writing to a search of the Dodge Caravan vehicle, including any luggage, containers, or items located in the interior and/or exterior of the vehicle.

20. Responding to an enquiry by the WCSO officer, Soon Boonnam informed the officer that a sum of money was inside a red duffel bag located in a floor compartment under the right rear seat of the Dodge Caravan vehicle. Soon Boonnam further stated that she did not know how much money was in the red duffel bag and that the money in the red duffel bag belonged to her brother.

21. Based on the consent provided by Jeske, the WCSO officer conducted a search of the Dodge Caravan vehicle. During the search, the WCSO officer located a red duffel bag in a floor compartment under the right rear seat of the Dodge Caravan vehicle. The red duffel bag contained

a quantity of U.S. currency comprised of 12 separate bundles with each bundle of currency inside a separate heat-sealed plastic bag.

22. The consensual search of the Dodge Caravan vehicle also yielded the discovery of five large suitcases in the cargo area in the back of the vehicle. The five suitcases were empty of any contents. Responding to an enquiry from WCSO officer, Jeske stated that he and Soon Boonnam intended to buy clothes while in California. Jeske further stated that the currency located in the red duffel bag did not belong to him (Jeske) but rather belonged to Port Boonnam who was the brother of Soon Boonnam.

23. A canine trained to detect the odor of illegal drugs, including marijuana, alerted to the presence of the odor of such illegal drugs in the red duffel bag which was located in a floor compartment under the right rear seat of the Dodge Caravan vehicle.

24. Following the discovery of the U.S. currency located in the red duffel bag, as described in paragraph 21, above, Soon Boonnam voluntarily completed an Interdiction Currency Seizure Questionnaire. Responding to questions in the questionnaire regarding the U.S. currency located in the red duffel bag, Soon Boonnam responded "no" to the question "Are you owner of this currency?" and responded "Port Boonnam" in response to the question "To whom does this currency belong?"

25. Following the discovery of the U.S. currency located in the red duffel bag, as described in paragraph 21, above, Soon Boonnam voluntarily completed a Disclaimer regarding the U.S. currency. The Disclaimer signed by Soon Boonnam includes the statement written by Soon Boonnam "The money is my brother winning from gambling."

26. The defendant in this action is the U.S. currency found within the red duffel bag which was located in a floor compartment under the right rear seat of the Dodge Caravan vehicle, as described in paragraph 21, above.

27. The U.S. currency located as described in paragraph 21, above, was comprised of 689 $100 bills, 263 $50 bills, 5,888 $20 bills, and 12 $10 bills.

28. The defendant property constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

29. The defendant property constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

30. Because of the foregoing, the defendant property is subject to seizure and to forfeiture and has become and is forfeited to the United States of America, plaintiff, under 21 U.S.C. § 881(a)(6).

## CONCLUSION

WHEREFORE, the United States of America, plaintiff, prays as follows:

1. Due process issue to enforce the forfeiture of the defendant property;

2. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3. The defendant property be condemned and be forfeited to the United States of America; and

4. This court enter other and further relief as it deems just and proper.

Dated this 29th day of July, 2013.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

/s/ Greg Addington
GREG ADDINGTON
Assistant United States Attorney

# VERIFICATION

I, Shane Murray, am a Special Agent of the Drug Enforcement Administration, United States Department of Justice, and am the agent assigned the responsibility of this case.

I have read the contents of the foregoing Complaint for Forfeiture in Rem, and the statements contained therein are true to the best of my knowledge, information and belief.

I declare and verify under penalty of perjury that the foregoing is true and correct.

DATED: 07-29-2013

_____
SHANE MURRAY, Special Agent
Drug Enforcement Administration